# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LORETTA L. LUCERO,**

    Plaintiff,

    v.                                    **CIV NO. 00-562 DJS/RLP**

**GREG GREENLEE, JAY LONGLEY**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before this Court upon Plaintiff's Motion for Summary Judgment on Probable Cause filed December 13, 2001 (Docket No. 70); Defendant Greenlee's Motion for Summary Judgment filed January 10, 2002 (Docket No. 79), Defendant Longley's Motion for Summary Judgment filed January 14, 2002 (Docket No. 83), and Defendant Greenlee's Motion for Summary Judgment on Plaintiff's Purported Official Capacity Claims filed January 10, 2002 (Docket No. 75). The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment.

This action is a suit pursuant to 42 U.S.C. §1983 with pendant state tort claims. Plaintiff asserts that Defendant Greenlee executed a materially false affidavit in support of search warrants for the home she shared with Chris Ortiz. The house was searched on April 27, 1998 and Plaintiff was arrested. In addition, cash, cocaine, and heroin found in the house was seized. Plaintiff contends

1

that the warrant, her arrest and the following criminal complaint were unsupported by probable cause. Plaintiff contends that the affidavit in support of the search warrant, which was sworn to by Defendant Greenlee, contained false allegations. Plaintiff also asserts that the drugs belonged to Ortiz and that the cash was proven to be unrelated to any drug activity.

Plaintiff further alleges that Defendant Greenlee submitted a second materially false affidavit in support of a second search warrant, which was executed about May 17, 1998. She contends that she was detained and suffered damages during the course of the second search, which did not result in the discovery of contraband. The first criminal complaint against Plaintiff was dismissed and a second complaint was filed against her by Defendant Longley. The charges contained in that complaint, which were based on evidence discovered in the April 27, 1998 search, were dismissed for failure to state probable cause after a hearing in New Mexico Magistrate Court. Defendants argue that they are entitled to qualified immunity and that both the search warrants and the criminal complaints were supported by probable cause for their issuance.

## STANDARD OF LAW FOR SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact..." Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations and quotations omitted). The material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion. Harsha v. United States, 590 F.2d 884, 887 (10th Cir. 1979). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Hulsey v. Kmart,Inc., 43 F.3d 555, 557 (10th Cir. 1994).

**QUALIFIED IMMUNITY**

Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). If a plaintiff has sufficiently alleged specific conduct resulting in the deprivation of a federal right, a defendant has the burden of demonstrating that no genuine issue of material fact would defeat qualified immunity. See Fed. R.Civ. P. 56( c); Romero v. Fay, 45 F. 3d 1472, 1475 (10th Cir. 1995). In making this assessment, the evidence is viewed in the light most favorable to the nonmovant, but disputes about immaterial matters will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986); Baptiste v. J. C. Penney Co., 147 F. 3d 1252 (10th Cir. 1998).

The law is clearly established that an officer violates an individual's Fourth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or

search warrant if the false statement was material to the finding of probable cause. Bruning v. Pixler, 949 F.2d 352, 357 (10th Cir.1991). A reckless disregard for the truth in the context of an alleged Fourth Amendment violation requires that the plaintiff prove that the affiant entertained serious doubts as to the truth of his allegations in support of the warrant. Id. (citations omitted). Recklessness may be inferred form the omission of facts which are "clearly critical to a finding of probable cause". Id. (citations and internal quotes omitted). The Court concludes that Defendants Longley and Greenlee are entitled to qualified immunity from Plaintiff's §1983 claims.

**PROBABLE CAUSE FOR ARREST**

Defendants contend that the face of the warrants and the affidavits submitted in support of those warrants establish probable cause for the searches of Plaintiff's home. They further contend that evidence uncovered during the first search provided probable cause for her arrest. Plaintiff disputes both assertions, arguing that probable cause for her arrest did not exist and that Defendant Greenlee both lied in the affidavit in support of the search warrants and omitted material facts which would have precluded the magistrate judge from finding probable cause. It is Plaintiff's burden to establish that the grounds for probable cause for her arrest which were relied upon by Defendants did not constitute such cause. See Romero v. Fay, 45 F.3d 1472, 1476 n. 1 (10th Cir. 1995).

The officers searching Plaintiff's home discovered three grams of cocaine in the pocket of Chris Ortiz, her boyfriend of many years who lived in the residence. In addition, the officers found eight grams of black tar heroin and $2, 821 in cash. Of that cash, $1,161 came from Ortiz' wallet and $1,400 from Plaintiff's purse. Plaintiff later proved that the $1,400 from her purse were winnings

from the New Mexico lottery.[1] The heroin was found by Defendant Greenlee in two portions, one portion was inside a shaving kit in the bathroom and one portion was in plain sight on top of the shaving kit. Plaintiff has submitted an affidavit by Chris Ortiz in which he admits ownership of a small portion of heroin found inside the shaving kit, but denies that he had another ball of heroin in plain sight on his shaving kit. However, in deposition Ortiz testified that he was holding the heroin found in the bathroom for a friend and that it was not Defendant Greenlee's heroin. In addition, Plaintiff submitted Ortiz' guilty plea in which he pleaded guilty to possession of the cocaine found in his pocket and admitted to having been previously convicted of attempted distribution of heroin in return for the current charge of possession of heroin with intent to distribute being dismissed.

Law enforcement officers may arrest a person without a warrant if there is probable cause to believe that person committed a crime. United States v. Gordon, 173 F.3d 761, 766 (10th Cir.) cert. denied 528 U.S. 886 (1999). To determine if probable cause existed for a warrantless arrest the Court must examine if the facts and circumstances within the officer's knowledge at the time of arrest were sufficient to warrant a prudent officer in believing the arrestee had committed or was committing a crime. Id. "Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." Id. (quoting United States v. Morgan, 936 F.2d 1561, 1568 (10th Cir.1991)). In this instance, probable cause existed for Plaintiff's arrest, due to the presence of drugs in the house, specifically in the bathroom which Plaintiff admitted she

---

[1] Plaintiff attached documents to her response to Defendant Greenlee's Motion for Summary Judgment showing that she won the $2,000 a few days prior to the search. Her deposition testimony, also attached to that pleading, establishes that the funds were returned to her on February 29, 2000. However, she has not provided the Court with any evidence of the date upon which she provided prosecutors or police with the evidence that she had obtained the money legitimately.

5

shared with Ortiz[2], and on Ortiz' person, as well as the large amounts of cash in both Plaintiff and Lucero's possession. Cf. United States v. Dozal, 173 F.3d 787, 792 (10th Cir. 1999)(Arrest based upon Defendant's presence in house with two ounces of cocaine in shared bathroom and co-defendant's use of "we" and "us" in reference to drug transaction); United States v. Hugaboom, 984 F.2d 1083 (10th Cir. 1993)(Defendant's arrest based on presence in house with drugs, odor of methamphetamine laboratory on him, and flight from scene).The officers were not required to believe Plaintiff's explanation that she had won the money in the lottery. See Romero, 45 F.3d at 478, n. 3. The information available to either of them was sufficient to support her arrest upon either occasion when she was charged.

As noted in the opening paragraph, Plaintiff moved for summary judgment on the issue of probable cause, asserting the doctrine of offensive collateral estoppel and arguing that the New Mexico Magistrate Judge's dismissal of the charges against her at her preliminary hearing has established that there was no probable cause for Defendant Greenlee or Defendant Longley to bring charges against her. Plaintiff argues that the state judge's determination is binding in this litigation. When determining the preclusive effect of the state court's finding regarding probable cause, this Court must apply New Mexico law. See McFarland v. Childers, 212 F.3d 1178, 1185 (10th Cir. 2000). Under New Mexico law, a party seeking collateral estoppel must demonstrate that the parties are the same or are in privity with the original parties, that the subject matter or the cause of action in the two suits is different, that the issue or fact was actually litigated, and that the issue was

---

[2]In her deposition, Plaintiff stated that the bathroom was used by all members of the house and that she had items on the shelf where the shaving kit was found. Memorandum in Support of Defendant Greenlee's Motion for Summary Judgment, Exhibit C, Deposition of Loretta Lucero, pp. 34-36 .

necessarily determined. Rex, Inc. v. Manufactured Housing Committee of State of New Mexico, 892 P.2d 947, 951 (N.M. 1995). "If the moving party demonstrates each element of this test, the court must then determine whether the non-moving party had a full and fair opportunity to litigate the issue in prior litigation." Id. (internal quotation omitted). Defendants dispute that they are in privity with the state in the criminal proceeding and also dispute whether they had a full and fair opportunity to litigate the issue of probable cause.

Plaintiff asserts that privity is established by the fact that Defendants are sued in their individual and their official capacities and the holding of New Mexico courts that agencies of the state are in privity with one another. In re Forfeiture of Fourteen Thousand Six Hundred and Thirty Nine Dollars in United States Currency, 902 P.2d 563 (N.M. Ct.App. 1995). The problem with Plaintiff's argument is that neither a state nor its officials acting in their official capacities are "persons" within the meaning of §1983. Stidham v. Peace Officers Standards and Training, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)).[3]

In response to Defendant Greenlee's Motion for Summary Judgment on Official Capacity Claims filed January 10, 2002, Plaintiff argues that she has alleged facts demonstrating municipal liability on the basis of the participation of the Tenth Judicial District Attorney, Patricia Parke, in the preparation of the search warrants for her home and in the prosecution of the cases against her and against Chris Ortiz. Plaintiff refers to the deposition testimony of Defendant Greenlee that Parke provided him with information regarding a drug-sniffing dog's alert to a jacket worn by Plaintiff's daughter during a sweep of the Tucumcari High Shool and that Parke typed the affidavits in support

---

[3]Plaintiff seeks only monetary damages in this lawsuit and does not assert any claims for injunctive relief. Amended Complaint filed January 23, 2001 (Docket No. 36).

of the warrants. In addition, Plaintiff notes that, after some time, Parke recused her office from the prosecution because of Ortiz' friendship with her ex-husband. However, none of these allegations, nor indeed any allegations pointing to municipal liability, are made in Plaintiff's amended complaint. Plaintiff was aware of Parke's recusal long before the filing of the amended complaint and could have sought to add allegations regarding her earlier participation in the prosecution long before the filing of the motion for summary judgment. Not only has Plaintiff failed to make any allegations which would give notice of municipal liability, but §1983 claims against Quay County were dismissed on October 16, 2000. (Memorandum Opinion and Order filed 10/16/00, Docket No. 25). Plaintiff never moved to re-instate those claims. Leaving aside the question of whether the actions of the District Attorney can be imputed to the County, Plaintiff has consistently failed to allege facts supporting a municipal liability or official capacity claim on the face of either of her complaints.

Because no official capacity or municipal liability claims exist in this lawsuit, except as may be permitted by the New Mexico Tort Claims Act, this Court finds that Plaintiff's privity argument based upon the conflation of state agencies under New Mexico law fails. Further, the interests of Defendant Greenlee and Defendant Longley in their individual capacities are not the same as those of the state in a criminal proceeding. Plaintiff has not, and cannot, show that the Defendant officers are responsible for prosecuting the action or that they were able to make decisions regarding plea agreements, the dismissal or alteration of charges, or any other aspect of the prosecution once the complaints were brought. Cf. McFarland, 212 F.3d at 1185-86 (Noting that officers in their individual capacities are not parties to a criminal case). Consequently, Plaintiff is not entitled to summary judgment on this issue and, as previously discussed, Defendants had probable cause to arrest her.

**PROBABLE CAUSE FOR SEARCHES**

With regard to the search warrants, Plaintiff contends that Defendant Greenlee both falsified the information purported to be provided by a confidential informant and left out material facts which undercut probable cause. However, she has failed to show that Greenlee falsified any of the information given in support of the affidavit. Further, the information which she contends should have been included in the affidavit does not preclude a finding of probable cause.

Plaintiff has provided deposition testimony showing that Defendant Greenlee destroyed any of his files or notes which resulted from his dealings with the confidential informant while employed by the Quay County Sheriff's Department. Greenlee testified that he paid the informant after the April 27, 1998 search and may have paid the informant after the May 17, 1998 search. The Quay County Sheriff produced a ledger of confidential informant payments showing cash distributed to Defendant Greenlee as "advances to officer" on April 27, 1998, May 1, 1998, May 8, 1998 and June 24, 1998 in amounts from $500 to $60. No further documentation which could be attributed to payments to an informant by Defendant Greenlee has been produced to Plaintiff. When questioned in deposition, Defendant Greenlee could not remember the name of the informant nor any details about that person. In addition, Plaintiff submitted her affidavit in which she stated that no persons, other than herself and her family, were in her home in the morning hours of April 26, 1998. The affidavit in support of the search warrant states that the confidential informant was present in Plaintiff's house at that time and that the informant observed Chris Ortiz in possession of ten ounces of cocaine. None of these facts constitute evidence that Greenlee made up the informant.[4] At most,

---

[4]Plaintiff's affidavit does not account for the possibility that one of her family members was the informant. During the execution of the first search warrant, two of Plaintiff's daughters, one of her friends, her cousin, and her sister-in-law were present at various times. Plaintiff's

9

it establishes a failure to follow procedures on his part or raises an inference of irregularity with regard to his dealing with the informant.

As previously noted, Plaintiff also argues that Defendant Greenlee left information out of the affidavits in support of the search warrants. For instance, in his affidavit in support of the April 27, 1998 warrant, Greenlee stated that Ortiz lived at the location to be searched with his wife and daughter, that the daughter had been present in school during K-9 sweeps for drugs, and that the dog had repeatedly alerted to her clothing, particularly when she was wearing a jacket belonging to her father. However, in his deposition, Greenlee stated that he had been informed of those facts by Patricia Parke, the District Attorney, and that he did not in fact know whether the dog had alerted on the girl's clothing more than one time.[5] However, the omission or inaccuracy of the allegations regarding the dog alerts to the daughter's clothing does not vitiate the finding of probable cause based upon the affidavit. See United States v. Richardson, 86 F.3d 1537, 1545 (10th Cir.) (reaffirming that an affidavit lacking personal knowledge of illegal activity is not fatal to the probable cause determination), cert. denied, 519 U.S. 1030 (1996); United States v. Sullivan, 919 F.2d 1403, 1423-24 (10th Cir.1990) (stating that although the affidavit supporting the search warrants contained errors, the trial judge's findings were not clearly erroneous and defendants did not demonstrate otherwise). The information contained in the affidavit relating the confidential informant's observations and the reliability of previous tips from that informant, as well as Defendant Greenlee's experience and training regarding investigation of narcotics, are sufficient to

---

Response to Defendant Greenlee's Motion for Summary Judgment, Ex. 12.

[5]In her deposition, Plaintiff affirmed that her daughter told her that a K-9 dog had alerted to her desk during a sweep of the school. Memorandum in Support of Defendant Greenlee's Motion for Summary Judgment, Exhibit C, Deposition of Loretta Lucero, p. 283.

establish probable cause. See Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1988) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."); Stewart v. Donges, 915 F.2d 572, 583 n. 13 (10th Cir.1990)(opining that "not every omission of relevant information will be regarded as 'material.' The omitted information must be so probative as to negate probable cause.").

Plaintiff also asserts that Greenlee failed to include statements by the informant that he or she had observed Ortiz selling cocaine while Plaintiff observed on several occasions. Plaintiff states that Greenlee revealed this information for the first time at his deposition but that he did not know the time frame of the events or the amounts of cash or drugs involved. Because of that lack of specificity, the information was properly left out of the affidavit in support of the search warrants. In any event, it does not undercut any finding of probable cause. Similarly, the affidavit in support of the warrant states that Ortiz "is known to local law enforcement as a long time drug dealer...." Greenlee testified in deposition that, by that statement, he was referring to the Tucumcari Police Department, the New Mexico State Police, and a local drug task force. However, he did not recall the time frame when he spoke to those individuals. These details are not wilfully misleading and do not undercut the finding of probable cause.

The affidavit in support of the warrant refers to "intelligence reports" that Ortiz had been dealing more drugs in the previous two or three months and that the deals took place mainly in his house. At deposition, Defendant Greenlee stated that the "intelligence reports" were his own notes, which are now missing. Greenlee destroyed his notes and files in anticipation of a change in administration at the sheriff's office. While reference to the officer's notes as "intelligence reports" is misleading, the general reference to unspecified and unattributed reports does not contribute

significantly to the probable cause established by the warrant and the omission of those references does not undercut the finding. In light of all of the foregoing facts, Plaintiff's allegations are insufficient to state a claim pursuant to §1983 for a Fourth Amendment violation based upon a false or misleading affidavit in support of a search warrant. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978) (Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided only if the affidavit's remaining content is insufficient to establish probable cause); Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir.1996) (In case where the defendant alleges information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause); United States v. Myers, 106 F.3d 936, 940 (10th Cir.) (declining to address alleged falsehoods in affidavit because even without them the warrant established probable cause), cert. denied, 520 U.S. 1270 (1997).

Plaintiff points out that the second warrant, issued on May 17, 1998, did not result in the discovery of any contraband. In fact, the warrant for her house was one of three issued that day based upon the same information. The same confidential informant who provided Defendant Greenlee with the information which lead to the April 27, 1998 warrant told the officer that Chris Ortiz had received a load of one pound of cocaine and a smaller amount of heroin and that Ortiz and divided the drugs between three individuals. In addition to the warrant for Plaintiff's house, Defendant obtained warrants for the residences of William Martinez, Ronald Young, and Raymond Quintana. Plaintiff attached portions of transcripts of unsworn interviews with Martinez, Young, and Quintana to her Response to Defendant Greenlee's Motion for Summary Judgment as Exhibits 17, 19, and 21. Because those transcripts do not constitute admissible evidence, they were not considered by this

Court. However, Plaintiff also provided a portion of William Martinez's sworn deposition in which he denied the allegations which formed the basis of the warrant for his residence. The searches of the Martinez, Young and Quintana residences did not result in the discovery of cocaine or heroin as indicated by the confidential informant. Notwithstanding that fact, Plaintiff has not indicated and this Court is not aware of any case law holding that the validity of a warrant is in any way influenced by the discovery of contraband by the search it authorizes.

**PENDANT CLAIMS**

Plaintiff asserts claims for malicious abuse of process, assault, and battery. In addition, she generally asserts that her rights under the New Mexico Constitution have been violated. In her response to Defendant Greenlee's Motion for Summary Judgment, Plaintiff concedes that her claims for common law assault and battery should be dismissed. This Court will dismiss those claims. However, when federal claims are eliminated from a complaint, the federal court should decline the exercise of further jurisdiction by dismissing the complaint without prejudice. United Mine Workers v. Gibbs, 383 U. S. 715, 726-727 (1966). Plaintiff's §1983 claims will be dismissed. Consequently, Plaintiff's remaining state claims alleging malicious abuse of process and violation of the New Mexico Constitution will also be dismissed, but that dismissal will be entered without prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment on Probable Cause is denied; Defendant Greenlee's Motion for Summary Judgment is granted in part; Defendant Longley's Motion for Summary Judgment is granted in part, and Defendant Greenlee's Motion for Summary Judgment on Plaintiff's Purported Official Capacity Claims is granted. Plaintiff's claims pursuant to 42 U.S.C. §1983, as well as her common law claims for assault and

batter are hereby dismissed with prejudice. Plaintiff's claims for malicious abuse of process and violation of the New Mexico Constitution are dismissed without prejudice.

                                                         **DON J. SVET**
                                                         **UNITED STATES MAGISTRATE JUDGE**